FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 21 2022

TAMMY H. DOWNS, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | |
|---|---|
| PATRICE APPLEWHITE,<br>INDIVIDUALLY, ON BEHALF OF<br>THE ESTATE OF K.D.A., DECEASED, and<br>ON BEHALF OF THE WRONGFUL DEATH<br>BENEFICIARIES OF K.D.A | PLAINTIFF |
| v. | Case No.: 2:22-cv-00014-JM |
| LIGHTHOUSE ACADEMIES OF ARKANSAS, INC.;<br>LIGHTHOUSE ACADEMIES, INC.;<br>LIGHTHOUSE ACADEMIES OF CENTRAL ARKANSAS, INC.;<br>and JACKSONVILLE LIGHTHOUSE CHARTER SCHOOL | DEFENDANTS |

This case assigned to District Judge Moody
and to Magistrate Judge Volpe

## ORIGINAL COMPLAINT

NOW COMES Patrice Applewhite, Individually, on behalf of the Estate of K.D.A., Deceased and on behalf of the wrongful death beneficiaries of K.D.A, by and through her attorneys Martin J. Cirkiel from the Cirkiel Law Firm, P.C. and Jared Woodard with Stanley + Woodard law firm, who brings her *Original Complaint* alleging that the Lighthouse Academies of Arkansas, Inc. ("LAA"), Lighthouse Academies, Inc., Lighthouse Academies of Central Arkansas, Inc., and Jacksonville Lighthouse Charter School ("the School") violated the various rights of K.D.A., as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, and as permitted by law. In support thereof, Plaintiff respectfully shows the following:

# I. PROLOGUE

1. Some of the children who are victimized by bullies become violent in their own effort to lash out against their tormentors. The vast majority of students who are bullied at school suffer in silence, attending school each with the simple hope and prayer that they simply, will be left alone. It is well-known across the professional education community that those who are not left alone, and continue to be victims of bullying and harassment, unfortunately turn their rage on themselves. They become angry, then depressed and often suicidal, just like what has occurred with K.D.A.

2. For the child and families, families left behind, there is nothing more disturbing than knowing your children was a victim of discrimination, that you complained about and essentially nothing was done. To give meaning to their child's experience, they feel compelled to tell their story. They feel a duty to do so in the hope the presentation of their story will prevent the same from happening to another child and another family. In the course of this telling, these victims benefit from a healing effect. The healing and empowerment is even more pronounced, when the effort to tell their story is before a Federal Judge and in Federal Court, where the bright light and sanitizing effect of federal law and the Judge's gaze is forced to shine upon the issue as Ms. Applewhite has chosen in her son's case.

# II. BRIEF INTRODUCTION TO THE CASE

3. K.D.B. was bullied and harassed because he was effeminate and did not meet normal gender stereotypes for young boys, especially males of African-American descent. His mother complained to the School Principal on numerous occasions about the physical and verbal harassment her son was receiving from other students but the Principal failed to

respond. K.D.B. became more and more despondent and without any respite from the bullies eventually killed himself. His mother brings forward this complaint on behalf of herself and her son's estate, due to the acts and omissions and deliberate indifference of the above Defendants, including the Jacksonville Lighthouse Charter School District. Accordingly, Plaintiffs brings forth this lawsuit with Constitutional Claims as contemplated by 42 U.S.C. Section 1983, Title IX of the Education Amendments of 1972 20 U.S.C. §1681-1688 ("Title IX"), state and common law claims and a request for equitable relief.

### III. JURISDICTION

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 because the matters in controversy arise under the laws and rules of the United States as noted above.

5. Furthermore, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

### IV. VENUE

6. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in the Eastern District of Arkansas.

### V. PARTIES

7. K.D.A. was a citizen of the State of Arkansas and lived with his mother, Patrice Applewhite in St. Francis County at 245 Lexington Dr, Forrest City, AR 72335. At all pertinent times relevant to this lawsuit, K.D.A was a pupil in the Jacksonville Lighthouse Charter School and lived at 245 Lexington Dr, Forrest City, 72335. It is uncontroverted that K.D.A. is of African-American descent.

3

8. In addition, Patrice Applewhite was at all pertinent times, a citizen of the State of Arkansas in St. Francis County and brings forward this complaint individually, as the representative of her son's estate and on behalf of the wrongful death beneficiaries of her son's estate. He had five siblings to remain un-named at this juncture.

9. Defendant Lighthouse Academies of Arkansas, Inc. ("LAA") is a domestic nonprofit corporation organized under the laws of the State of Arkansas. They are all times responsible for development of policies and procedures for the charter schools that they administer. Additionally, they are all times responsible for the supervision and training of staff at the charter schools that they administer. They may be served by and through their Registered Agent, Business Filings Incorporated, 124 West Capitol Ave., Ste. 1900, Little Rock, Arkansas, 72201.

10. Defendant Lighthouse Academies, Inc. is a foreign nonprofit corporation organized under the laws of the State of Arkansas. They are all times responsible for development of policies and procedures for the charter schools that they administer. Additionally, they are all times responsible for the supervision and training of staff at the charter schools that they administer. They may be served by and through their Registered Agent, Business Filings Incorporated, 124 West Capitol Ave., Ste. 1900, Little Rock, Arkansas, 72201.

11. Defendant Lighthouse Academies of Central Arkansas, Inc. is a nonprofit corporation organized under the laws of the State of Arkansas. They are all times responsible for development of policies and procedures for the charter schools that they administer. Additionally, they are all times responsible for the supervision and training of staff at the charter schools that they administer. They may be served by and through their Registered Agent, Lighthouse Academies Arkansas, Inc., North Little Rock, Arkansas, 72114.

12. Defendant Jacksonville Lighthouse Charter School is a Charter School organized under the laws of the State of Arkansas and at all times is required to follow the policies and procedures as set forth by the parent corporation. They are responsible for the care, management and control of all school business as to K.D.A., the training of teachers at the school as to safety, supervision of students within the district, and for the course of study. They may be served by and through Jacksonville Lighthouse Charter District's Executive Director and Superintendent, Ms. LaShawnda Noel, at 401 Main Street, Little Rock, Arkansas, 72214.

## VI. HISTORICAL BACKGROUND OF TITLE IX

A. About Title IX

13. The Educational Acts of 1972 passed through Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. sections 1681 through 1688. It is commonly known as "Title IX" and states (in part) that:

"No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."

It is intended to remedy the effects of discrimination based upon sex, gender or gender stereotypes. Moreover it is to assure that a student is not a victim of bullying, harassment, sexual harassment, assault or sexual assault because of their membership in a protected class.

B. The Operative Law & Regulations

14. The United States Department of Education ("DOE") promulgated rules to help implement Congress' intent at 34 C.F.R. §106.1, which became effective as early as July 1, 1975. From the inception of Title IX the United States Department of Education

5

("DOE") in their Office for Civil Rights (OCR) issued policy guidance on discriminatory harassment. They did so on discrimination based upon race (*see* 59 Fed. Reg. 11448 (Mar. 10, 1994) and later regarding harassment based upon sex ["Title IX"] (*see* 62 Fed. Reg. 12034 [Mar. 13, 1997]).

15. A School must have a Title IX Coordinator, 34 C.F. R. §106.8 whose duty it is, among other things, to assure that students and their parents receive notice of their *due process rights* under the statute and its implementing regulations, 34 C.F.R. §106.9 including and especially notice of the School's complaint procedure. 34 C.F. R. §106.9.  During an investigation of a formal Title IX complaint, a School must provide a party whose participation is invited or expected written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate. 34 C.F.R. §106.45(b)(5)(v).

C.  Professional Standards Of Care Developed By The Department Of Education

16. After holding public hearings, the DOE issued policy guidance on discriminatory harassment based upon sex and gender ["Title IX"]; 62 Fed. Reg. 12034 (1997).  First and foremost, the School must provide a parent notice of their *due process rights* including an explanation of such rights as noted above, notice of who the Title IX Coordinator for the School, how to contact that person, the grievance procedure itself, the right to get an investigatory report when completed and to appeal the findings, (p. 12038, Col. III; p. 12040, Col. I-II; p. 12043, Col. II;  p. 12044, Col. II-III; p. 12045, Col. I-II), as contemplated by Title IX's implementing regulations. Additionally, a School has a duty to te "immediate and appropriate steps to promptly investigate (p. 12039, Col. III; ;p. 12042 (Col. II-III) ..." the allegations, end any harassment "and prevent harassment

6

from occurring again.... and te steps to remedy (p. 12037) the effects of the harassment" which includes, among other things, to contact the parent." (p. 12042, Col. II-III; p. 12043, Col. III; p. 12044, Col. III).

D. The Department Of Education- Office Of Civil Rights

17. Early on the United States Department Of Education ("DOE") *Office of Civil Rights* ("OCR") provided guidance to public school district's across the country by issuing what have been called *Dear Colleague Letter*. They have provided ongoing leadership with these directives for now over twenty years. Most relevant to this lawsuit they underscore the operating law and implementing regulations noted above. In addition, the OCR reviews the evolving jurisprudence on the topic of sexual harassment including and especially the Supreme Court cases of Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992) [applying Title VII principles to teacher upon student sexual harassment at a school]; Gebser v. Lago Vista Independent School District, 524 U.S. 274, 290; 118 S. Ct. 1989; 141 L. Ed. 2d 277 (1998) [addressing teacher upon student sexual harassment and that liability arises because a school district does not address the harassment] and Davis v. Monroe County Board of Education, 526 U.S. 629; 119 S. Ct 1661; 143 L. Ed. 2d 839 (1999) [addressing student upon student sexual harassment] and their progeny.

18. This *Guidance* from the OCR makes clear that school personnel must understand their legal obligations to address harassment based upon sex, gender and gender stereotypes. It lists a number of examples of effective actions including, most importantly timely and impartial investigations. Additionally, it provided further direction on its specific obligations and reiterated that in completing an investigation the School should review

7

the effect of the bullying and sexual harassment on the child's education; the type, frequency and duration of the conduct, the number of individuals involved, the location of incidents and the "totality of the circumstances." Importantly, the School is required to provide prompt and effective action, let a family know of the harassment the child was experiencing in a timely manner and provide information about their procedural rights under the regulations including and especially a grievance process.

19. Last, if a student has been a victim of sexual harassment the school district has a number of potential interventions including providing/ paying for counseling, working with a tutor, and giving the student the opportunity to me up work. Moreover, an essential part of a School's duty is to provide ongoing assessment and follow up inquiries, as to the effectiveness or ineffectiveness, of any remedy actually or attempted to be provided. It reinforced the need for a strong Title IX Compliance Coordinator to assure that the School followed the various directives developed by the OCR. Importantly, a School must provide to parent complaining that their child was a victim of sexual harassment by another student, information of any disciplinary action the School District took against an offending student.

20. Defendant Charter School District did none of these things.

## VII. STATEMENT OF FACTS

21. K.D.A. was born on July 6, 2009. He dies on January 22, 2020.

22. K.D.A. was a wonderful ten-year-old that was funny, smart, outgoing and had a big, bright, beautiful smile. He had a large and loving family, both local and extended.

23. K.D.A. was short for his age, and soft spoken but when he spoke his voice was "squey." While he was slight of build, he did have a protruding "booty" which ten together he

8

became a prime target for the bullies in the school.

24. K.D.A. entered the School on October 2, 2019 after the family transferred into the area from a military base.

25. By the 17th mother received a call from the Assistant Principal that her son was involved in an altercation with another student. Apparently K.D.A. used a pencil to defend himself.

26. On the 19th he came home crying as a group of boys were making fun of his clothing, calling it a costume.

27. He was bullied and harassed daily by boys for being different.

28. The School had a dress code but a student could earn points for being "good" and get to wear blue jeans for a day, instead of their uniforms.

29. On those occasions K.D.A. would wear his pants tight unlike many of his peers that choose to wear their pants baggy and sagging off of their bodies.

30. He had a slight stature and appearance.

31. The bullies would call him "gay" or a "sissy" or "fag" or "tweety-bird" because he wore his pants tight, had skinny legs but a protruding buttock.

32. K.D.A would be called a "Sissy" relentlessly.

33. The bullying would not stop. One student told K.D.A that his mother didn't love him and that he came from a garbage can.

34. K.D.A.'s bully would tell K.D.A that his clothes came from Goodwill and that he stank.

35. The bully and the assistant Principal would often K.D.A. to wash himself that he stank and that he needed a haircut.

36. K.D.A would be called a "Sissy, fag and tweety-bird" because his pants were "tight" and legs skinny.

37. K.D.A.'s mother would complain to the Charter School Administrators and they would ignore Ms. Applewhite's complaints and cry 's for help.

38. The name calling was almost on a daily basis. If the bully was at school, K.D.A.'s day would be torture. The only time K.D.A got a reprieve from the bullying is when his bully wasn't in school.

39. Ms. Applewhite would constantly ask the Assistant Principal for a parent/teacher conference to try to find a resolution to her son's bullying problem.

40. Each time, the Assistant Principal made excuses as to why they couldn't meet. There was never any effort or attempt to help K.D.A. Rather Ms. Applewhite was only met with disregard and dismissed without any care for her son.

41. Right before Thanksgiving that year K.D.A. came home crying about a particularly bad day. The main bully told K.D.A. to kill himself. Mother again complained to the Assistant Principal. He said he would look into it after the break. Mother does not know what the Assistant Principal did if anything, but the bullying, harassment name calling did not stop.

42. Just before his death he came home from school with huge mark on right eye. The bully had jumped him in the bathroom. The mark would have been obvious to anyone who has seen it.

43. Ms. Applewhite reported the incident to the Assistant Principal. Like the other complaints it fell on deaf ears.

44. K.D.A. continued to be bullied and harassed and called names when he went to school.

45. More and more he claimed he was sick in the morning and would not go to school.

46. Through the month of December, the bullying and harassment worsened. He even got into trouble again, for defending himself but the bullies got off with no penalties.

47. After the Christmas break and New Year when K.D.A. went back to school the bullying and harassment continued.

48. To mother's knowledge the bullies were never punished.

49. To mother's knowledge no parent of a bully was contacted by any school official.

50. Left unabated and unprotected K.D.A. became more and more depressed. His mother found him hanging in a closet at home on January 22, 2020.

51. There were no phone calls, text messages or email from anyone with the School. Even when mother went to the School on the 23rd no one said a thing.

## VIII. STATE ACTION

52. Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

53. The Charter School in any capacities and in all matters, were acting under color of state law when they permitted K.D.A. to be subjected to the wrongs and injuries set forth herein.

## IX. CONSTITUTIONAL CLAIMS AGAINST DEFENDANT SCHOOL

A. K.D.A HAS A CONSTITUTIONAL RIGHT TO BODILY INTEGRITY

54. K.D.A had a well-established right to bodily integrity pursuant to the *Due Process Clause* 14th Amendment to the United States Constitution. Additionally, he has a liberty interest in freedom of movement, also pursuant to *Due Process Clause* 14th Amendment.

B. STAFF CREATED THE DANGER LEADING TO VIOLATION OF K.D.A.'s RIGHTS

55. The Staff of the School knew of the bullying that K.D.A. was experiencing but failed to stop it. They have custody of K.D.A. each day and put him in or let his remain in contact they knew were bullying and harassing him. Thus, the Charter School is liable to K.D.A. pursuant to what is termed the *State-Created Danger Theory*. Accordingly, the

11

representative of his estate seeks recovery for his injuries pursuant to 42 U.S.C. §1983.

C.     THE CHARTER SCHOOL BOARD FAILED TO CORRECTLY SUPERVISE STAFF

56. In addition, and in the alternative, Plaintiffs contend that the Defendant Charter School had a number of written policies and procedures to protect K.D.A. from exploitation, abuse and sexual harassment, and assault from other students within the School. Such policies and procedures are intended to protect his constitutional rights but staff were obviously not supervised in how to assure such School Policies and Procedures were followed. Accordingly, they are liable to K.D.A. and his estate seeks recovery for his injuries pursuant to 42 U.S.C. §1983.

D.     THE CHARTER SCHOOL FAILED TO TRAIN STAFF

57. Equally and also in addition and in the alternative, Plaintiffs contend that the Defendant Charter School had a number of written policies and procedures to protect K.D.A. from exploitation, abuse and sexual harassment, and assault from students within the School. Such policies and procedures are intended to protect his constitutional rights but staff were obviously not trained in how to assure such Charter School Board Policies and Procedures were followed. Accordingly, they are liable to K.D.A. and he seeks recovery for his injuries pursuant to 42 U.S.C. §1983.

E.     THE CHARTER SCHOOL VIOLATED K.D.A.'s RIGHT TO EQUAL PROTECTION

58. The United States Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the law. Equally the Texas Constitution provides that "all free men...have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges." Texas Constitution, art. 1, Section 3. The acts and omissions of the School noted above, violated the rights of K.D.A. pursuant to the *Equal*

*Protection Clause* of the Fourteenth Amendment. Accordingly, they are liable to his estate which seeks recovery for his injuries pursuant to 42 U.S.C. §1983.

## X. CLAIMS PURSUANT TO 20 U.S.C. §§ 1681-1688 AND TITLE IX OF THE EDUCATION AMENDMENTS ACT OF 1972

59. Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

60. In addition, and in the alternative to the above, Plaintiffs contend the Charter School acting under color of law deprived K.D.A. of rights and privileges secured to him by Title IX of the Education Amendments Act of 1972 and by other laws of the United States by discriminating against him on the basis of gender and gender stereotypes.

61. The acts and omissions of the Charter School deprived K.D.A. of his right to not be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, on the basis of his sex or gender stereotypes for which the School Defendant is liable to K.D.A.'s estate pursuant to 20 U.S.C §1681-1688 for compensatory damages.

## XI. NEGLIGENCE

62. Plaintiffs incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

63. The Arkansas Lighthouse Academies Defendant had a duty to supervise the Jacksonville Charter School Defendant in a manner commensurate with the laws, rules and standards of care pertaining to such an organization. It did not fulfill such duties.

64. The Arkansas Lighthouse Academies Defendant had a duty to train the Jacksonville Charter School Defendant in a manner commensurate with the laws, rules and standards

of care pertaining to such an organization. It did not fulfill such duties.

65. The Arkansas Lighthouse Academies Defendant was negligent and breached its duty of care as to K.D.B. and his mother which proximately caused damages to him, and the Arkansas Lighthouse Academies Defendant and is liable to the estate thereby.

## XII. WRONGFUL DEATH CLAIMS

66. As a result of the wrongful death of KDA, his mother and heirs did suffer injury, including termination of the parent-child and familial relationship and severe mental anguish, and will, in reasonable probability, continue to suffer damages in the future as a direct result of the wrongful death of her child, in an amount within the jurisdictional limits of the court. Additionally, on behalf of the wrongful death beneficiaries, she seeks damages for loss of companionship and society, both past and future. Ms. Applewhite brings this claim pursuant to Ark. Code Ann. § 16-67-102.

## XIII. SURVIVORSHIP CLAIMS

67. This claim for damages occurring after the death of K.D.A is brought by the surviving family members in the name of the estate against all Defendants on behalf of the deceased. Any person or entity required to be a named Plaintiff in this lawsuit to collect damages under Ark. Code Ann. § 16-67-101 because of the personal injuries suffered by decedent, his own pain and suffering, based upon the facts and legal theories more fully set out above.

## XIV. RATIFICATION AND RESPONDEAT SUPERIOR

68. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

69. Arkansas Lighthouse Academies Defendant ratified the acts, omissions and customs of its

personnel and staff. As a result, this Defendant is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of K.D.A.

70. Jacksonville Lighthouse Charter School ratified the acts, omissions and customs of Charter School personnel and staff. As a result, this Defendant is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of K.D.A.

71. Additionally, the Arkansas Lighthouse Academies Defendant is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of K.D.A. pursuant to the theory of Respondeat Superior.

72. Further, the Jacksonville Lighthouse Charter s is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of K.D.A. pursuant to the theory of Respondeat Superior.

## XV. PROXIMATE CAUSE

73. Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

74. Each and every, all and singular of the foregoing acts and omissions, on the part of the School, ten separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XVI. SPOILATION

75. Plaintiff hereby requires and demands that each Defendant preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations that me the basis of the complaint and the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic

15

data/information, and any other evidence regarding the violations set forth herein.

76. Failure to maintain such items constitutes "spoliation" of evidence, which necessitates use of the spoliation inference rule, i.e, an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVII. DAMAGES

77. Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

78. As a direct and proximate result of the School's conduct, K.D.A. has suffered injuries and damages, for which he is entitled to recover herein within the jurisdictional limits of this court, including but not limited to:

   a. Physical pain in the past;

   b. Physical impairment in the past,

   c. Medical expenses in the past;

   d. Mental anguish in the past;

   e. Mental health expenses in the past;

   f. Mental anguish in the past, present, and future for wrongful death beneficiaries.

   g. Mental health expenses in the future for the family;

   h. Funeral expenses; and

   i. Various out-of-pocket expenses incurred on behalf of K.D.A. by and through his family; and all but for the acts and omissions of the Defendants.

## XVIII. ATTORNEY FEES

79. It was necessary for Plaintiff to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs pursuant to Title IX and pursuant to 42 U.S.C. §2000d et seq.

## XV. EQUITABLE RELIEF

80. Plaintiff Patrice Applewhite, Individually and on behalf of the estate of her son and wrongful death beneficiaries, respectfully requests the Court considering ordering the Defendants to:

   a. Adopt an anti-bullying and harassment program that is provided by a third-party, including the Anti-Defamation League or the Southern Poverty Law Center;

   b. Adopt policies, procedures, and practices commensurate with the Dear Colleague Letter from the United States Department of Education Office for Civil Rights to include but not be limited to:

      i. the provision of school assemblies and instruction on bullying;

      ii. addressing bullying and harassment based upon disability or race or gender or common stereotypes that accompany those subjects in classroom intervention settings;

      iii. conducting an assessment at each campus;

      iv. forming a prevention coordination team at each school;

      v. including language specifically identifying bullying and harassment based upon disability or race or gender and common stereotypes that accompany those subjects in the school rules and student handbook;

      vi. develop a strategy to prevent such bullying or harassment in hot spots;

       vii.    post signs in classrooms prohibiting bullying and harassment and listing its consequences; and

       viii.    provide a place and manner of confidential reporting and encouraging students to help classmates who are being bullied and harassed and to report such bullying and harassment;

c.    That for the next three years the school provide for a school-safety coordinator for each Campus, so as to assure that the program is enacted comprehensively.

d.    That they retain a neutral third party to complete a bullying assessment for each campus and have that person or entity report back to the President of the School Board and Superintendent so they may address any issues noted in the assessment;

e.    That staff receive "Diversity training" by a third party to include information about gender, race, and disability stereotypes;

f.    That the school provide a marker in the school library, where books and other materials would be made available to students dealing with bullying harassment, and related emotional concerns and issues related to gender, race, and disability along with common stereotypes that accompany those subjects;

g.    That Anti-bullying month be recognized by the Defendant School ;

h.    That the school help facilitate the provision of counseling services for students deemed to be at risk; and

81.    That the School Board appoint a committee including interested members of the public to address the issues noted herein, report back to the Board and act accordingly.

## XVI. DEMAND FOR JURY TRIAL

82. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff on behalf of the estate of K.D.A. and the wrongful death beneficiaries of K.D.A, prays for judgment against the Defendants jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Title IX, 42 U.S.C. §1983, 1988 and 42 U.S.C. §2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court may deem just and proper in law or in equity or in both.

Respectfully submitted,

/s/ Jared Woodard
Jared Woodard
State Bar No. 2004148
Stanley + Woodard Law Firm
326 S. Church Street
Jonesboro, Arkansas, 72401
jared@stanleywoodard.com
870.932.2000 (phone)
870.972.9999 (fax)

>Mr. Martin J. Cirkiel, Esq.
>Fed. ID No. 21488
>State Bar No. 00783829
>marty@cirkielaw.com [Email]
>Cirkiel Law Group, P.C
>f/k/a Cirkiel & Associates, P.C.
>1901 E. Palm Valley Boulevard
>Round Rock, Texas 78664
>(512) 244-6658 [Telephone]
>(512) 244-6014 [Facsimile]
>www.cirkielaw.com
>**ATTORNEYS FOR PLAINTIFFS**